IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

JAMES E. DISHON,              *

         *

    Plaintiff,        *

         *

vs.                  *    Civil Action 07-00779-B

         *

MICHAEL J. ASTRUE,       *

Commissioner of        *

Social Security,       *

         *

    Defendant.       *

<u>**ORDER**</u>

Plaintiff James E. Dishon ("Plaintiff") brings this action seeking judicial review of a final decision of the Commissioner of Social Security denying his claim for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 401 <u>et seq</u>. and 1381 <u>et seq</u>. On September 12, 2008, the parties consented to have the undersigned conduct any and all proceedings in this case. (Doc. 19). Thus, this case was referred to the undersigned to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636© and Fed.R.Civ.P. 73. (Doc. 20). Oral argument was held on November 19, 2008. Upon consideration of the administrative record and memoranda of the parties, it is **ORDERED** that the decision of the Commissioner be **AFFIRMED.**

## I.   <u>Procedural History</u>

Plaintiff filed applications for disability insurance benefits and supplemental security income on August 7, 2004[1]. He alleged that he became disabled on September 15, 2002 due to arthritis, diabetes mellitus, hypertension and high cholesterol. (Tr. 77-78). His applications were denied at the initial stage, and he timely filed a Request for Hearing before an Administrative Law Judge. (Tr. 41, 48, 180). Administrative Law Judge R. G. Goosens ("ALJ" or "ALJ Goosens") conducted an administrative hearing on January 12, 2006, and a supplemental hearing on January 18, 2007. Both hearings were attended by Plaintiff, his representative and a vocational expert. (Tr. 186-206, 207-230). On April 25, 2007, ALJ Goosens issued an unfavorable decision wherein he concluded that Plaintiff is not disabled. (Tr. 17-39). On September 7, 2007 the Appeals Council denied review of the ALJ's decision. Thus, the ALJ's decision became the final decision of the Commissioner of Social Security pursuant to the regulations. (Tr. 4-6). The parties agree that this case is now ripe for judicial review and is properly before this Court pursuant to 42 U.S.C. § 405(g).

---

[1] The date on Plaintiff's applications is August 7, 2004. (Tr. 59-61, 176-179). The initial determination forms state that the filing date was March 11, 2004 (Tr. 41, 180), and the ALJ decision and Defendant's Brief state that the Plaintiff "protectively filed" his applications on July 30, 2004 (Tr. 20, Doc. 17 at 1).

## II. **Background Facts**

Plaintiff was born on June 7, 1958 and was 47 years old at the time of the first administrative hearing, and 48 years of age at the time of the second hearing. (Tr. 59, 115, 176, 186, 207, 211). Plaintiff has a 12th grade education and past relevant work ("PRW") experience unloading boats and trucks, processing shrimp, delivering and setting up furniture, and fueling cars and trucks at a truck stop. (Tr. 81, 86, 111, 211, 214-216). Plaintiff testified that in his last position, he loaded and unloaded boats and trucks, and harvested and processed shrimp, which he did for 12 years. (Tr. 214-215). According to Plaintiff, he was laid off in 2002 because he could not perform his duties. (Tr. 212).

Plaintiff further testified that he was under the care of Dr. Benjamin for diabetes and high blood pressure when he stopped working. (Tr. 216-217). Plaintiff testified that he has numbness and burning in his lower extremities, and has no feeling in his lower legs. He also testified that knots come up on his left leg, and he gets bruises all over his legs. (Tr. 222). According to Plaintiff, when he stands on his legs for a period of time, his legs lock up and will not move. (Tr. 220). Plaintiff testified that he can walk or stand for about 20 minutes, and can sit for about 30 to 40 minutes before he has to change positions. (Tr. 221).

Plaintiff described a typical day as one in which he gets up and gets his wife off to work, gets the children ready for school, lays down until about 11:00, watches TV until the kids get home, and gets the mail from the mailbox. He occasionally puts a puzzle together or plays a game with his children. He also indicated that he tries to do a little cooking and cleaning. (Tr. 222-223). Plaintiff's medications have included Glucopage, Glucotrol, Elavil, Lotrimin AF and Verelan. (Tr. 109, 123, 124, 219).

In a Physical Activities Questionnaire dated August 20, 2004, Plaintiff indicated that he can take care of his personal needs and can mow the lawn and shop; however, it takes him longer to complete such activities due to joint pain, burning and numbness in his feet and legs. (Tr. 94).

## III.  Issues on Appeal

A.  Whether the ALJ erred in determining that Plaintiff is capable of performing a significant number of jobs existing in the national economy, and in relying on the testimony of the vocational expert.

B.  Whether the ALJ erred in failing to properly consider Plaintiff's pain in determining his ability to work.

C.  Whether the ALJ erred in failing to consider whether the Plaintiff has an impairment or combination of impairments that meets or medically equals Listings 1.02 or 9.08.

## IV.  Analysis

### A.  Standard of Review

In reviewing claims brought under the Act, this Court's role is a limited one. This Court's review is limited to determining 1) whether the decision of the Secretary is supported by substantial evidence, and 2) whether the correct legal standards were applied. Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990).[2] A court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986). The Commissioner's findings of fact must be affirmed if they are based upon substantial evidence. Brown v. Sullivan, 921 F.2d 1233, 1235 (11th Cir. 1991); Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (finding that substantial evidence is defined as "more than a scintilla but less than a preponderance," and consists of "such relevant evidence as a reasonable person would accept as adequate to support a conclusion[]"). In determining whether substantial evidence exists, a court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's decision. Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986); Short v. Apfel, 1999 U.S. DIST. LEXIS 10163 (S.D. Ala. 1999).

**B.   Discussion**

An individual who applies for Social Security disability

_____

[2]This Court's review of the Commissioner's application of legal principles is plenary. Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).

benefits must prove his disability.  20 C.F.R. §§ 404.1512, 416.912.

Disability is defined as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a).  The Social Security regulations provide a five-step sequential evaluation process for determining if a claimant has proven his disability.  20 C.F.R. §§ 404.1520, 416.920.[3]  See, e.g., Crayton v. Callahan, 120 F.3d 1217, 1219 (11th

---

[3]The claimant must first prove that he or she has not engaged in substantial gainful activity.  The second step requires the claimant to prove that he or she has a severe impairment or combination of impairments. If, at the third step, the claimant proves that the impairment or combination of impairments meets or equals a listed impairment, then the claimant is automatically found disabled regardless of age, education, or work experience.  If the claimant cannot prevail at the third step, he or she must proceed to the fourth step where the claimant must prove inability to perform their past relevant work.  Jones v. Bowen, 810 F.2d 1001, 1005 (11th Cir. 1986).  In evaluating whether the claimant has met this burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; (4) the claimant's age, education and work history.  Id. at 1005. Once a claimant meets this burden, it becomes the Commissioner's burden to prove at the fifth step that the claimant is capable of engaging in another kind of substantial gainful employment which exists in significant numbers in the national economy, given the claimant's residual functional capacity, age, education, and work history.  Sryock v. Heckler, 764 F.2d 834 (11th Cir. 1985).  If the Commissioner can demonstrate that there are such jobs the claimant can perform, the claimant must prove inability to perform those jobs in order to be found disabled. Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999). See also Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987) (citing Francis v. Heckler, 749

6

Cir. 1997).

In the case <u>sub</u> <u>judice</u>, the ALJ found that Plaintiff met the insured status requirements for disability purposes through December 31, 2007, and that Plaintiff has not engaged in SGA since September 15, 2002, the alleged onset date. (Tr. 22). He further found that while Plaintiff has the severe impairments of arthritis of the knees, hip, and shoulders, and diabetes mellitus with neuropathy of the legs and feet, they do not meet or equal one of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (Tr. 22, 25). The ALJ determined that Plaintiff's hypertension, toenail fungus, and obesity are non-severe impairments because there is no objective evidence in the record to show they have resulted in significant work-related limitations for a continuous period of at least 12 months, and no treating physician has placed work restrictions of Plaintiff because of these conditions. (Tr. 24). The ALJ found that Plaintiff's hand arthritis was not a "medically determinable impairment" as Plaintiff has submitted no objective medical evidence of hand arthritis, and it cannot be reasonably inferred from the medical evidence of record. (Tr. 25).

The ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform work at the sedentary exertion level, with no climbing, stooping, kneeling, crawling, or reaching

---

F.2d 1562, 1564 (11th Cir. 1985)).

overhead, and occasional pushing/pulling with arms or legs, balancing, crouching or handling. He also found environmental limitations in that Plaintiff cannot work in high, exposed places, and can only occasionally work in proximity to moving mechanical parts or drive automotive equipment. (Tr. 26). The ALJ found that Plaintiff's subjective complaints and alleged functional limitations that conflict with the RFC was not supported by the evidence and lacked credibility. (Tr. 27).

Finally, utilizing the VE's testimony, the ALJ concluded that Plaintiff could not perform any of his past relevant work ("PRW"); however, he could perform jobs that exist in significant numbers in the national economy. Thus, he is not disabled. (Tr. 30).

Based upon a review of the record, the undersigned finds that substantial evidence of record supports the ALJ's decision. The medical evidence reflects that Plaintiff was treated by Regina Benjamin, M.D., beginning in June of 2001. The nurse Intake Sheet on this day reflect that Plaintiff complained of numbness in his feet and toes, and feeling tired. Dr. Benjamin noted that Plaintiff's blood glucose had been in the 280's, and was now 220. She also noted that Plaintiff's physical exam was normal; however, she observed that his left great toe had a pressure lesion, but the skin was unbroken skin, and he had shoulder muscle atrophy. She prescribed Glucophage. (Tr. 124, 130).

Plaintiff returned for a follow-up visit on July 3, 2001. Dr.

Benjamin noted that Plaintiff's blood glucose was 297, that his right toes were discolored and that his toe nails were discolored and raised. She diagnosed him with diabetes mellitus and fungal rash, and prescribed Lotrimin, AF. (Tr. 123). He presented to Dr. Benjamin nearly a year later, on May 6, 2002, complaining of numbness in his toes, burning in his left leg for about eight months, pain and clicks in his right shoulder and pain in his left elbow and knee for over a year. His blood glucose was 256. Plaintiff's physical exam was normal except for a slightly red ear canal, and point tenderness in his right shoulder joint. Dr. Benjamin diagnosed Plaintiff with diabetes mellitus, hypertension, shoulder atrophy, and peripheral neuropathy. (Tr. 122).

In a follow-up appointment on February 4, 2003, Plaintiff reported that he had not had Glucophage in three weeks, and stated that he felt "shaky." Plaintiff's blood glucose was 229, and his physical exam was normal. Dr. Benjamin noted that there was no edema in his extremities. (Tr. 120). In an office visit on March 24, 2004, Plaintiff complained of severe pain from his right shoulder down into his right leg, and also of left lower quadrant pain for two months. Plaintiff was observed sitting stiffly, guarding any movement of his right arm, and he would not allow manipulation of the shoulder. The notes reflect there was tenderness to palpation. Plaintiff was diagnosed with right arm pain, right leg pain, diabetes mellitus, urinary tract infection and

hypertension. Plaintiff was prescribed Univasc, Celebrex and Flextra. (Tr. 118, 119).

Plaintiff returned to Dr. Benjamin on April 5, 2004, complaining of right shoulder and elbow pain and pain on the right side of his back. His blood glucose was 259. Plaintiff was diagnosed with right arm pain, leg pain, diabetes mellitus, hypertension and hyperlipidemia, and was prescribed increased Univasc and Colestid and was continued on Glucophage. (Tr. 118). In a follow-up visit to Dr. Benjamin on April 26, 2004, it was noted Plaintiff's blood glucose was 212. Plaintiff's physical exam was normal. He was diagnosed with diabetes mellitus, urinary tract infection and leg pain, and was referred to an orthopedic surgeon. (Tr. 117).

Plaintiff returned to Dr. Benjamin on February 3, 2005, complaining of pain in his right leg after a fall in the bathtub. He also complained of frequent leg cramps and headaches. He reported that he stopped taking his medication for hypertension and arthritis. His blood glucose was 325, and his physical exam was normal except for no pedal pulses in his extremities and right ankle resolving ecchymosis.[4] Dr. Benjamin diagnosed Plaintiff with diabetes mellitus, hypertension and peripheral vascular disease.

---

[4]Ecchymosis is skin discoloration resulting from blood that escapes into tissues from ruptured blood vessels. www.medterms.com. (Last visited September 18, 2008).

10

(Tr. 159).

In a follow-up visit on February 10, 2005, Plaintiff complained of cramps in both legs, right leg pain, headaches, right ear ache, and cramps increasing in his inner thighs. His blood glucose was 185, and on physical exam, Plaintiff had pink tympanic membranes with effusion, and sinus congestion and tenderness. He was diagnosed with diabetes mellitus, hypertension, peripheral vascular disease and upper respiratory infection, and was prescribed increased Glucophage, Doxycycline, and Anaprox. (Tr. 158).

In an office visit on February 17, 2005, Plaintiff complained nausea, and stated that he did not fill his prescriptions for Doxycycline and Anaprox because he could not afford it. Plaintiff's physical exam was normal except for dull, pink tympanic membranes, and sinus congestion and tenderness. Dr. Benjamin diagnosed him with upper respiratory infection, diabetes mellitus and hypertension, and prescribed Rocephin and Amoxicillin. (Tr. 157).

Plaintiff returned to Dr. Benjamin on February 24, 2005, complaining of sinus congestion and a little nausea. Plaintiff's physical exam revealed dull tympanic membranes, but was otherwise normal. He was diagnosed with hypertension, diabetes mellitus and upper respiratory infection. (Tr. 156).

Plaintiff was treated by Dr. Benjamin on May 3, 2005 for nighttime leg cramps and numbness in both legs. His physical exam

was normal except for lesions on his feet. Dr. Benjamin noted that his pulses and capillary refill were good, but that he reported no feeling to mid-calf bilaterally. Dr. Benjamin prescribed Elavil, and continued Plaintiff on Verelam and Glucophage. (Tr. 155).

In an office visit on May 5, 2005, Plaintiff complained of cramps in his legs and feet, numbness in his feet, pain in his chest muscle and pain in his legs after cutting grass. His physical exam was normal except for no pulses on either foot. Dr. Benjamin diagnosed Plaintiff with claudication[5], diabetes mellitus and hypertension, and she ordered arterial Dopplar studies on both legs. (Tr. 154).

Plaintiff's next visit with Dr. Benjamin was on November 16, 2005. Plaintiff reported that he was in a motor vehicle accident on November 14, 2005, and that he had been out of his blood pressure medication for several months. His physical exam was normal, and he was diagnosed with diabetes mellitus and hypertension and claudication. (Tr. 153). During visits on November 29, 2005 and December 2, 2005, Plaintiff's physical exam was normal, except for a lesion on his left shoulder with decreased overall erythema and increased left side erythema. He was again diagnosed with diabetes mellitus, hypertension, and cellulitis. (Tr. 152, 153).

---

[5]Claudication is a tight, aching or squeezing pain in the calf, thigh, or buttock, and is the earliest and most common symptom of peripheral artery disease. www.webmd.com. (Last visited September 19, 2008).

Dr. Benjamin completed a consultative examination dated April 25, 2006 at the request of the Agency. (Tr. 161-162). On physical exam, Dr. Benjamin noted general mild discomfort, but otherwise normal except for limited range of motion in the shoulders, legs and knees, one plus edema, darkening in coloration suggestive of peripheral vascular disease, radial pulses 4+ bilaterally, pedal pulses 1+ bilaterally, feet cool to touch, and a removed left great toenail. Dr. Benjamin noted that Plaintiff had difficulty getting onto and off of the exam table, an abnormal gait in that he bent over and walked with difficulty, an inability to squat, and heal/toe with difficulty. She notes that he did not use a cane or walker, but had notable weakness in his upper extremities with 3+ strength in arms bilaterally, 2+ deep tendon reflexes in the elbows, noticeably weak grip in his hands bilaterally, and negative Romberg[6]. He was able to move from supine to sitting without difficulty, had no atrophy in his hands, had 3+ weakness in his lower extremities bilaterally, reflexes were diminished at 1+, sensory deficits were noted in both extremities, and he was unable to distinguish light touch. Dr. Benjamin diagnosed Plaintiff with severe advanced arthritis of the legs, shoulders and hips, peripheral neuropathy of the legs and feet, diabetes mellitus, hypertension, and fungal infection in his toenails. (Tr. 161-164).

_____

[6]Romberg's test is positive in conditions causing sensory ataxia, such as peripheral neuropathy.
www.nlm.nih.gov/medlineplus. (Last visited September 25, 2008).

She opined that Plaintiff's dexterity is mildly restricted and his grip strength is moderately restricted. (Tr. 166).

Dr. Benjamin completed a Medical Source Opinion form on June 2, 2006. She opined that, due to arthritis in his hip and knees, Plaintiff can stand 30 minutes at a time and four hours total in an eight-hour workday, can walk 15 minutes at a time and two hours total in an eight-hour workday, and can sit without limit. She further opined that Plaintiff is limited to lifting and carrying 10 pounds occasionally due to arthritis in his shoulders. She further opined that Plaintiff can never climb, stoop, kneel crawl, reach overhead or work in high exposed places; that Plaintiff can occasionally push/pull with his arms and legs, balance, crouch, and handle; that Plaintiff can frequently be exposed to extreme cold and heat, wetness/humidity, vibration, fumes, noxious odors, dust, mists, gases or poor ventilation; and can constantly finger, feel, talk and hear. (Tr. 167-169). Dr. Benjamin noted that Plaintiff does not have an assistive device; however, she opined that, due to his severe arthritis, he walks with difficulty and could benefit from a walking cane. (Tr.170).

In a Clinical Assessment of Pain form completed on March 1, 2007, Dr. Benjamin noted that Plaintiff experiences moderate pain, which is tolerated but causes diminution of the capacity to carry out some specific daily activities and requires regular non-narcotic medication and occasional narcotic medication. She opined that

physical activity, such as sitting, walking, standing, bending and lifting increases pain intensity and causes distraction or abandonment from tasks related to daily activities or work, and that medication for the pain creates some limitations, but does not create serious work problems. Dr. Benjamin opined that Plaintiff can stand up to four hours per day, or walk up to two hours per day but not both, and that he would require frequent rest periods. (Tr. 175).

The record also reflects that Plaintiff was treated at Stanton Road Clinic on May 21, 2004 for right shoulder pain, right hip pain, right knee pain and neuropathy symptoms in his upper and lower extremities. His physical exam was normal, and he was diagnosed with arthritis in his right shoulder, left hip and right knee, and was prescribed physical therapy. (Tr. 132).

A. Jeffrey Zieman, M.D., conducted an examination of Plaintiff on November 12, 2004. Plaintiff's physical exam was normal except for "markedly diminished sensation" to light touch and firm palpation bilaterally below the knees, multiple nails with tinea unguium[7], and difficult to palpate pulses in the distal lower extremities. Plaintiff's bilateral hand grips, upper extremities, flexors and extensors had 5/5 strength, right shoulder had a

_____

[7]Tinea unguium is the most common fungus infection of the nails. www.medterms.com. (Last visited September 18, 2008).

slightly decreased range of motion from 0-140 degrees of abduction. Dr. Zieman also noted that there was modest crepitus to palpation of the right shoulder and bilateral knees, and that Plaintiff's bilateral lower extremities had 4/5 strength for flexors and extensors. Plaintiff had negative straight leg raising and anterior thoracolumbar flexion from 0-90 degrees, and he was able to squat and rise with complaints of severe bilateral knee pain. Dr. Zieman observed that Plaintiff appeared to struggle getting on and off the exam table, but that his gait was otherwise not impaired. Dr. Zieman also noted that the x-ray of Plaintiff's left knee showed mild degenerative changes and mild joint space narrowing. Dr. Zieman's diagnosis was non-insulin dependent diabetes mellitus, obesity, peripheral neuropathy and possible peripheral vascular disease secondary to diabetes mellitus, probable generalized degenerative joint disease ("DJD") and uncontrolled hypertension. (Tr. 133-134).

In a Physical Residual Functional Capacity Assessment dated November 23, 2004 a DDS physician opined that Plaintiff is limited to lifting 20 pounds occasionally and 10 pounds frequently, standing, walking and sitting for six hours in an eight-hour workday, no overhead pushing and pulling with upper extremities, and occasional pushing and pulling with foot controls. She further opined that Plaintiff can never climb ladders, ropes or scaffolds, and can occasionally balance, kneel, crouch, and crawl. She also

opined that Plaintiff can frequently climb ramps and stairs, and
frequently stoop. She further opined that Plaintiff has no
limitations on handling, fingering, and feeling, but is limited in
his ability to reach. She opined that Plaintiff should avoid
concentrated exposure to extreme cold and heat and to hazards such
as machinery and heights. (Tr. 135-142).

In undated records, Dr. Jongeblood noted that Plaintiff
complained of pain and a light amount of bleeding underneath his
right great toenail. Plaintiff's physical exam was normal but for
long and thickened toenails, with 3-5 cm dark blood underneath. He
was diagnosed with renal insufficiency, pleuritic chest pain,
diabetes mellitus, type II, onychomycosis[8], hypertension and gout.
(Tr. 171-172).

Treatment notes dated March 2, 2007 indicate that Plaintiff had
passed a kidney stone. He was alert and oriented, and his exam was
otherwise normal. He was assessed with diabetes mellitus, type II,
hypertension, neuropathy in diabetes, and renal stone. (Tr. 173).

1. **Whether the ALJ erred in determining that
   Plaintiff was capable of performing a
   significant number of jobs existing in the
   national economy, and in relying on the
   testimony of the vocational expert.[9]**

---

[8]Onychomycosis is a fungal disease of the nails.
www.nlm.nih.gov. (Last visited September 19, 2008).

[9]It is uncontested that the VE incorrectly identified the
jobs of gait guard and parking booth cashier as light work, and

Plaintiff argues that the ALJ erred in finding that Plaintiff has the RFC to perform a full range of sedentary work "accompanied by postural and environmental limitations." He argues that the Medical Source Opinion completed by Plaintiff's treating physician[10] places Plaintiff in the "less than a full range of sedentary" exertional level due to his limitations in reaching and handling and loss of bilateral manual dexterity. (Doc. 16 at 7-10). Plaintiff further argues that the ALJ erred in relying on the testimony of the VE because the VE "primarily relied on the O*Net[11]," in determining the availability of work in the national economy. (Doc. 16 at 10-11). Finally, Plaintiff argues that the ALJ erred in failing to take additional VE testimony regarding the limitations placed on Plaintiff in Dr. Benjamin's Clinical Assessment of Pain, which was submitted after the second administrative hearing, but before the ALJ rendered his decision. (Doc. 16 at 13-14, Tr. 175).

The ALJ set out the Plaintiff's RFC as follows:

[T]he undersigned finds that the claimant has retained

---

that the ALJ repeated that incorrect designation in his opinion. The VE's designation of the job of surveillance system monitor as sedentary, also repeated by the ALJ in his opinion, is correct.

[10]Tr. 167-168.

[11]O*Net is the Occupational Information Network, sponsored by the US Department of Labor/Employment and Training Administration. It is a database of occupational information. www.onetcenter.org. (Last visited September 23, 2008).

the residual functional capacity for at least sedentary exertion, . . . with the non-exertional postural limitations of no climbing, stooping, kneeling, crawling, or reaching overhead, and only occasional pushing/pulling with either of his arms or legs, balancing, crouching, or handling. The claimant has had the additional environment limitations of no work in high exposed places, and only occasional work in proximity to moving mechanical parts or driving automotive equipment as a regular occupational duty.

(Tr. 26).

Social Security Ruling 96-9p: *Titles II and XVI: Determining Capability to Do Other Work – Implications of a Residual Functional Capacity for Less Than a Full Range of Sedentary Work* ("SSR 96-9p") sets forth the nonexertional limitations and restrictions that impede an individual's ability to perform a full range of sedentary work. Included in that list is a *significant* manipulative limitation on an individual's ability to handle and work with small objects with both hands. Plaintiff's argument that Dr. Benjamin's finding that he cannot reach, and that he can occasionally handle and push/pull hand controls is consistent with a loss of "bilateral manual dexterity" is incorrect. Dr. Benjamin did not place significant limitations on Plaintiff's manual dexterity. In fact, she opined that Plaintiff is able to handle occasionally and finger constantly (Tr. 168), and that the impairment on his manual dexterity was "mild." (Tr. 166). Thus, Plaintiff's assertion that he has a loss of "bilateral manual dexterity" is without merit.

Also without merit is Plaintiff's argument that the ALJ erred

in relying on the testimony of the VE because of the VE's use of O*Net in determining that work that exists in the national economy in significant numbers. Plaintiff bases his assertion on a memorandum written by an Associate Commissioner for Social Security, "advising adjudicators not to use the O*Net in making decisions." (Doc. 16 at 10, Footnote 6). Plaintiff does not explain how a memorandum written by an Associate Commissioner for Social Security which advises **ALJ's** regarding the use of the O*Net has any bearing on the use of information from O*Net by a VE, who has the expertise to review information from that and other resources and draw expert conclusions therefrom.

Additionally, while it is uncontested that the VE incorrectly identified the jobs of gate guard and parking booth cashier as light work, the VE"s designation of the job of surveillance system monitor as sedentary was correct and Plaintiff has offered no evidence which suggests that the VE's testimony regarding the number of such jobs available in the national economy was incorrect. The regulations provide that the SSA will consider that work exists in the national economy when it exists in significant numbers either in the region where a claimant lives or in several other regions of the country.[12] In making these determinations, the SSA may take administrative notice of reliable job information

---

[12]12 C.F.R. 404.1566(a).

"available from various governmental and other publications," and may also use a vocational expert.[13] Because the record is devoid of any evidence which suggests that the VE used unreliable information in determining the number of surveillance system monitor jobs that exist in the national economy, his claim must fail.

Plaintiff's argument that the ALJ erred in failing to take additional VE testimony regarding the limitations contained in Dr. Benjamin's Clinical Assessment of Pain, which was received after the second administrative hearing, likewise fails. In order for the ALJ to rely on a VE's testimony to prove the existence of jobs a claimant can perform, the ALJ must pose a hypothetical that adequately describes all of his impairments and accurately reflects his educational level, age, and work skills and experience. Jones v. Apfel, 190 F.3d 1224, 1229. While an ALJ must pose a hypothetical that adequately describes a Plaintiff's limitations, it need not include Plaintiff's complaints of pain, but must address the functional limitations resulting therefrom. Howell v. Halter, Case No. Civ. A. 00-0348-CB-S, 2001 WL 936110 (S.D. Ala. May 8, 2001). In Howell, the court observed:

> "Pain" and "anxiety" are impairments; while they may impose functional limitations, they are not themselves functional limitations. It is thus within the purview of the ALJ to determine, independently of the vocational

---

[13]12 C.F.R. 404.1566(d).

expert, the functional limitations imposed by these impairments and then to inquire of the vocational expert what jobs, if any, remain open to one with these (and any additional) functional limitations found by the ALJ. The ALJ is not required simply to advise the vocational expert that the plaintiff experiences pain and anxiety and place upon the vocational expert the responsibility of determining what functional limitations are imposed by the pain and anxiety."

See also <u>Williams v. Barnhart</u>, 140 Fed. Appx. 932 (11th Cir. 2005), (the hypothetical posed to the VE implicitly took his pain into account by limiting the amount of weight he could lift and the frequency of his bending twisting, or stooping); <u>McCovery v. Halter</u>, Case No. Civ. A. 00-0195-CB-S, 2001 WL 936194 at 1 (S.D. Ala. May 4, 2001)(the ALJ did not err when he did not take additional vocational testimony after a post-hearing consultative examination where the ALJ's hypothetical question clearly incorporated all the relevant functional limitations he found existed, including functional limitations that were in the consultation report).

In the case at hand, Dr. Benjamin's consultative evaluation, Range of Motion Chart and Medical Source Opinion contained the functional limitations resulting from Plaintiff's pain in great detail. In posing the hypothetical to the VE at the second hearing, the ALJ adequately described all of the functional limitations arising from Plaintiff's impairments, including his pain, and took them into account in limiting Plaintiff to sedentary

work with no climbing, stooping, kneeling, crawling, reaching overhead, and only occasional pushing/pulling with arms or legs, balancing, crouching or handling. The hypothetical clearly incorporated all of Plaintiff's functional limitations, including those imposed as a result of his pain. The ALJ did not err in failing to take additional VE testimony following receipt of Dr. Benjamin's Clinical Assessment of Pain.

   2.   **Whether the ALJ erred in failing to properly consider Plaintiff's pain in determining his ability to work.**

Plaintiff argues that the ALJ did not properly evaluate Plaintiff's pain, as required by SSR 96-3p[14] and SSR 96-7p, and did not properly apply the Eleventh Circuit "pain standard," set forth in Holt V. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991).

In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be

---

[14]Social Security Ruling 96-3p: *Titles II and XVI: Considering Allegations of Pain and Other Symptoms in Determining Whether a Medically Determinable Impairment is Severe ("SSR 96-3p")* states that symptoms such as pain "will not be found to affect an individual's ability to do basic work activities unless the individual first established by objective medical evidence . . . that he or she has a medically determinable physical or mental impairment" that could reasonably be expected to cause the pain. Once that relationship is established, intensity, persistence and limiting effects of the pain must be considered in determining whether an impairment or combination of impairments is severe

expected to produce the pain alleged, the ALJ must apply the Eleventh Circuit's three-part "pain standard:"

> (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995). See also Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991). Pain alone can be disabling, even when its existence is unsupported by objective evidence, Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992), although an individual's statement as to pain is not, by itself, conclusive of disability. 42 U.S.C. § 423 (d)(5)(A).

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. Foote, 67 F.3d at 1561-1562; Jones v. Department of Health and Human Services, 941 F.2d 1529, 1532 (11th Cir. 1991). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. See Hale v. Bowman, 831 F.2d 1007, 1012 (11th Cir. 1987); MacGregor v. Bowen, 786 F.2d 1050, 1054 (11th Cir. 1986).

In the case sub judice, the ALJ stated as follows:

> After considering the evidence of record, the undersigned finds that the claimant's statements

concerning the intensity, persistence, and limiting effects of his alleged symptoms have not been entirely credible. . . .

During the hearing, I was observant of the claimant's demeanor, candor, and consistency of allegations as well as description of activities. I also closely reviewed all the exhibits before me and was aware of the frequency, scope, and type of medical treatment and findings involved, as well as any pertinent medical opinions of record. All of these considerations were taken into account in finding that there was a lack of credibility necessary to establish disability. . .

The claimant's attorney asked the undersigned to allow the claimant's treating physician, Dr. Benjamin, to perform a consultative examination and she agreed to do so in writing (Exhibit 11-E). Dr. Benjamin conducted the consultative examination and completed a physical capacities evaluation (Exhibit 7-F). After the supplemental hearing, the claimant's attorney submitted additional evidence from Dr. Benjamin (Exhibits 9-F and 10-F). It is noted that Dr. Benjamin rated the intensity of the claimant's pain as "moderate" (Exhibit 10-F, Question 1). The undersigned concludes that this pain level would be consistent with the physical capacities evaluation completed by Dr. Benjamin in Exhibit 17-F. . . .

The undersigned notes that the claimant has described daily activities which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations. Such activities have included yard work and household chores. . . .

[T]here has been evidence that the claimant has not been entirely compliant in taking prescribed medications (Exhibits 1-F and 6-F), which suggests that the symptoms may not have been as limiting as the claimant has alleged in connection with this application. . . .

The residual functional capacity conclusions reached by the reviewers employed by the State agency also have supported a

finding of "not disabled." Although those reviewers were non-examining, . . . those opinions do deserve appropriate weight in a case, such as this, where a similar conclusion of nondisability was reached (Exhibit 4-F). (Tr. 29-30). The ALJ's decision clearly shows that he considered the three-pronged standard established by the Eleventh Circuit, and found that while it is credible that Plaintiff experiences some pain and symptoms resulting from his impairments, it is not credible that he experiences the level of pain and symptomatology to the extent alleged. In reaching his opinion, the ALJ noted the frequency, scope and type of Plaintiff's medical treatment and pertinent opinions of record, particularly the opinion of Plaintiff's treating physician, Dr. Benjamin, who classified Plaintiff's pain as moderate; his daily activities, which included yard work and household chores; his non-compliance with medications; and the conclusion of State Agency reviewers. The ALJ correctly applied the Eleventh Circuit's three-part pain standard, and articulated specific and adequate reasons for discrediting Plaintiff's testimony about pain. Thus, Plaintiff's argument must fail.

3. **Whether the ALJ erred in failing to consider whether the Plaintiff has an impairment or combination of impairments that meets or medically equals Listings 1.02 or 9.08.**

Plaintiff next argues that the ALJ erred in determining that he does not have an impairment or combination of impairments that

meets or medically equals one of the listed impairments, noting particularly Listing 9.08 for diabetes mellitus and Listing 1.02 for major dysfunction of a joint(s). (Doc. 16 at 18).

Listing 9.08 requires a showing of diabetes mellitus with neuropathy demonstrated by "significant and persistent" disorganization of motor function in two extremities resulting in sustained disturbance of gross and dexterous movements, or gait and station, and acidosis[15] occurring at least an average of every two months, documented by appropriate blood chemical tests, amputation or retinitis profifens. 20 CFR Pt 404, Subpt. P, App. 1, § 9.08. While Plaintiff has been diagnosed with peripheral neuropathy associated with his diabetes mellitus (Tr. 122, 135, 165), he fails to meet Listing 9.08 because the medical records do not establish that had **significant and persistent** disorganization of motor function that results in **sustained disturbance** of gross and dexterous movements or gait and station. A review of the medical records reflect that Dr. Benjamin observed, in April 2006, that Plaintiff had an "abnormal gait," and had difficulty getting on and off the exam table, and in June 2006, she noted that Plaintiff had difficulty walking; however, the bulk of Plaintiff's treatment records do not reference any sustained problems with gait and station. In the absence of evidence that Plaintiff had sustained

---

[15]Reduced alkalinity of the blood and tissues. www.nlm.nih.gov/medlineplus. (Last visited September 25, 2008).

disturbance of gross and dexterous movements or gait and station, Plaintiff cannot establish that he meets Listing 9.08.

Plaintiff also argues that the ALJ erred in finding that Plaintiff did not meet Listing 1.02 for major dysfunction of a joint(s). Listing 1.02 requires that the joint dysfunction be:

> Characterized by gross anatomical deformity (e.g. subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:
>
> A. Involvement of one major peripheral weight-bearing joint (i.e. hip, knee, or ankle) resulting in inability to ambulate effectively as defined in 1.00B2b).

Section 1.00B2 describes "inability to ambulate effectively" as "an extreme limitation of the ability to walk" and generally as "having insufficient lower extremity functioning . . . to permit independent ambulation without the use of a hand-held assistive device."

Plaintiff's position is that he suffers severe arthritis of both knees and hips. (Doc. 16 at 20). First of all, Listing 1.02 requires findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). The record includes only one reference to an x-ray, and that reference is to an x-ray of Plaintiff's left knee. The x-ray showed "mild degenerative changes" and "some mild joint

space narrowing," but was otherwise normal (Tr. 134). This falls short of the "gross anatomical deformity" which is required to meet the listing. Additionally, it is clear from the record that Plaintiff does not use an assistive device (Tr. 163-164, 170), a requirement to show an inability to ambulate effectively pursuant to Section 1.00B2, which is also required in order to meet Listing 1.02. While Dr. Benjamin opined that Plaintiff would benefit from the use of a cane, there is no evidence that she ever prescribed one for Plaintiff or that he ever used one. Accordingly, the ALJ's finding that Plaintiff does not meet Listing 1.02 is not error, and substantial evidence supports that determination.

**V.   Conclusion**

For the reasons set forth, and upon consideration of the administrative record and memoranda of the parties, it is **ORDERED** that the decision of the Commissioner of Social Security, denying his claim disability insurance benefits and supplemental security income, is due to be **AFFIRMED.**

**DONE** this the **30**th day of **March, 2008.**


_____**/s/SONJA F. BIVINS**_____
**UNITED STATES MAGISTRATE JUDGE**